No. 23-4633

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**UNITED STATES OF AMERICA,**
*Plaintiff/Appellee,*

v.

**JOSHUA O'KEITH BELCHER,**
*Defendant/Appellant.*


On Appeal from the United States District Court
for the Western District of Virginia
Danville (Hon. Michael F. Urbanski)


BRIEF OF THE APPELLANT


**MARY MAGUIRE**
Federal Public Defender
for the Western District of Virginia

**ERIN TRODDEN**
Assistant Federal Public Defender
401 E. Market St., Ste. 106
Charlottesville, VA 22902
434-220-3396


*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ...................................................................................1

STATEMENT OF ISSUES.............................................................................................2

STATEMENT OF CASE ................................................................................................3

I.   Stop and arrest of Joshua Belcher ................................................................3

II.  Pretrial motions ..............................................................................................5

III. Trial of Joshua Belcher...................................................................................8

SUMMARY OF THE ARGUMENT ..............................................................................11

ARGUMENT ...............................................................................................................12

I.   The district court erred in denying the admission
     of Roy Lynwood Hairston, Jr.'s criminal conviction...................................12

     A.   Standard of Review.................................................................................12

     B.   Argument.................................................................................................12

II.  The district court erred in refusing to allow evidence of Officer
     Clark's actions during the 2020 traffic stop and resulting discipline. ......19

III. The district court erred in refusing to instruct
     the jury on Mr. Belcher's theory of defense...............................................24

     A.   Standard of review .................................................................................24

     B.   Argument.................................................................................................24

CONCLUSION ............................................................................................................26

STATEMENT REGARDING ORAL ARGUMENT.................................................27

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Brady v. Maryland,*
373 U.S. 83 (1963) ................................................................................ 6

*Giglio v. United States,*
405 U.S. 150 (1972) .............................................................................. 6

*Huddleston v. United States*
   485 U.S. 681 (1988) ........................................................................ 16

*Taylor v. Kentucky,*
436 U.S. 478 (1978) ............................................................................ 26

*United States v. Aramony,*
88 F.3d 1369 (4th Cir. 1996) ............................................................. 23

*United States v. Branch,*
970 F.2d 1368 (4th Cir. 1992) ...................................................... 14, 15

*United States v. Cole,*
631 F.3d 146 (4th Cir. 2011) ............................................................. 12

*United States v. Cornell,*
   780 F.3d 616, 629 (4th Cir. 2015) .................................................15

*United States v. Davis,*
No. 23-4370, 2024 WL 368329 (4th Cir. Jan. 31, 2024) ................. 13

*United States v. Delfino,*
510 F.3d 468 (4th Cir. 2007) ............................................................. 12

*United States v. Green,*
599 F.3d 360 (4th Cir. 2010) ............................................................. 24

*United States v. Hurt,*
527 F.3d 1347 (D.C. Cir. 2008) ......................................................... 25

*United States v. Leftenant,*
341 F.3d 338 (4th Cir. 2003) ............................................................. 13

*United States v. Lewis,*
53 F.3d 29 (4th Cir. 1995) ................................................................. 24

*United States v. Lopez,*
860 F.3d 201 (4th Cir. 2017) ......................................................... 17

*United States v. Mohr,*
318 F.3d 613 (4th Cir. 2003) ................................................... 20, 21

*United States v. Myers,*
589 F.3d 117 (4th Cir. 2009) ......................................................... 19

*United States v. Newby,*
403 F. App'x 809 (4th Cir. 2010) ................................................. 21

*United States v. Rubio,*
87 F.3d 1309 (4th Cir. June 17, 1996) (unpublished) ................. 20

*United States v. Sterling,*
860 F.3d 233 (4th Cir. 2017) ......................................................... 19

*United States v. Teran,*
496 F. App'x 287 (4th Cir. 2012) ................................................. 15

*United States v. Vidacak,*
553 F.3d 344 (4th Cir. 2009) ................................................... 14, 15

**Statutes**

18 U.S.C. § 922 .............................................................................. 5, 11
18 U.S.C. § 3231 ................................................................................. 1
18 U.S.C. § 3742 ................................................................................. 1
28 U.S.C. § 1291 ................................................................................. 1

**Rules**

Fed. R. Evid. Rule 104 ............................................................... 16, 17
Fed. R. Evid. Rule 403 ......................................................... 19, 23, 24
Fed. R. Evid. Rule 404 ............................................................... *passim*
Fed. R. Evid. Rule 608 ......................................................... 2, 7, 8, 22
Fed. R. Evid. Rule 690 ..................................................................... 17
Fed. R. Evid. Rule 901 ............................................................... 13, 14
Fed. R. Evid. Rule 902 ..................................................................... 14

No. 23-4633

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

JOSHUA O'KEITH BELCHER,
*Defendant/Appellant.*

On Appeal from the United States District Court
for the Western District of Virginia
Danville Division (Hon. Michael F. Urbanski)

BRIEF OF THE APPELLANT

STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. This appeal is from the judgment of the district court entered on September 26, 2023. J.A.767.[1] The notice of appeal was filed in the district court on October 10, 2023. J.A.774. Jurisdiction is based on 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

[1] References to the Joint Appendix are denoted "J.A.___."

Officer Jayme Clark stopped a truck in Martinsville, Virginia for having a broken taillight. Officer Clark testified that while conducting a security sweep of the truck, he located a pistol under the front seat. He arrested the driver, Joshua Belcher, who had a prior felony conviction. After extensive questioning by Officer Clark, Mr. Belcher stated that he bought the gun from an unknown person. The truck Mr. Belcher was driving belonged to Mr. Belcher's father, Roy Lynwood Hairston, Jr., who ran a car detailing business, and who also had a prior felony conviction. Did the district court err in excluding evidence of Mr. Hairston's prior conviction from the defense case, where it was offered to explain both Mr. Hairston's actions when he came to pick up the truck and Mr. Belcher's subsequent decision to admit to purchasing the gun?

Officer Clark (who is White), had been counseled for his behavior while enforcing his duties before Mr. Belcher's arrest. In 2020, the year after he arrested Mr. Belcher (who is Black), he falsely accused a different young Black man of resisting arrest and tased him. The incident was captured on Officer Clark's body worn camera and recounted in his disciplinary records after the incident. Did the district court err in prohibiting Mr. Belcher from introducing this evidence of Officer Clark's *modus operandi* under Rule 404(b) or cross examining him regarding this information under Rule 608?

At trial, Mr. Belcher offered a proposed theory of defense instruction stating that Mr. Belcher's defense was that he did not knowingly possess any weapon and that the government had not proven beyond a reasonable doubt that he knew a weapon was in the truck. Did the district court err in failing to give the theory of defense instruction?

<u>STATEMENT OF CASE</u>

## I.      **Stop and arrest of Joshua Belcher**

Officer Jayme Clark of the Martinsville, Virginia, police department, stopped Joshua Belcher on April 20, 2019, for driving a truck with a broken taillight. J.A.026-027. The stop and their interaction are captured on Officer Clark's dashcam and body-worn camera. J.A.339, J.A.341. Mr. Belcher and Clark knew each other from previous interactions, and Mr. Belcher addresses Clark as "Clark" throughout the stop and its aftermath. J.A.342, 373, 804. Officer Clark had often seen the truck in that area of town, and he knew it was associated with a local car wash where Mr. Belcher worked. J.A.339, 376.

Officer Clark approached the truck Mr. Belcher was driving, and when Mr. Belcher rolled down the window to speak with him, Clark announced that the vehicle smelled of fresh marijuana. J.A.029, 804. In response, Mr. Belcher handed Officer Clark the truck ashtray, which contained, among other items, the end of a single marijuana cigarette. J.A.029, 804. Clark asked where the rest of the weed was, and Mr. Belcher told him there was no more and he could check. J.A.029, 804. Clark also asked Mr. Belcher if he was going to work washing cars, to which Mr. Belcher responded

affirmatively. J.A.804. Clark then told him that he should not be driving, to which Mr. Belcher responded that he was on a restricted license. J.A.374-375, 804. Officer Clark ordered Mr. Belcher to put his "butt on the bumper" of Clark's cruiser and searched the truck. J.A.343, 804. In the process, he testified that he found a pistol under the truck's bench seat. J.A.344. The body camera footage does not initially show the pistol, but later bodycam and dashcam footage shows Clark handling it and removing it from the truck. J.A.804.

Clark detained Mr. Belcher and questioned him about the pistol, but Mr. Belcher denied knowledge of it. J.A.344, 804. Mr. Belcher was, however, upset, as Clark recognized and his body-worn camera shows. J.A.347, 804. Clark searched the remainder of the vehicle and found no marijuana or other contraband. J.A.379, 804. He did, however, find a vehicle registration showing that the truck was registered to Mr. Belcher's father, Roy Lynwood Hairston, Jr. J.A.353, 430. After the search was completed, Officer Clark called Mr. Belcher's father to come and retrieve his truck rather than placing it in impound. J.A.355, 805. Mr. Belcher asked to speak with his father when he arrived, but his father refused to talk to him. J.A.356-358, 805.

Officer Clark arrested Mr. Belcher and took him to the Martinsville police station, where he continued to question him about the firearm. J.A.385-386, 806. Eventually, he told Mr. Belcher that he would charge him with possession of a stolen firearm if he did not tell him where he got the firearm. J.A.387, 806. Officer Clark then

asked Mr. Belcher if he had bought the firearm off of someone, and Mr. Belcher finally responded, "Yeah, but I don't know who the person was I got it from." J.A.388, 806.

## II.     Pretrial motions

Mr. Belcher was charged on July 11, 2019 in a single-count Indictment with possession of a firearm after having been convicted of a crime punishable by more than one year of incarceration, in violation of 18 U.S.C. § 922(g). J.A.021. Trial was postponed several times on the motion of counsel and due to the COVID-19 pandemic. *See generally* J.A.001-020. In November 2021, the government moved *ex parte* for in camera review of Officer Clark's body camera footage from a different traffic stop, in April 2020, of another young Black man, as well as of the disciplinary records resulting from that stop. J.A.775-795, 803. The district reviewed the materials and ordered their disclosure to the defense. J.A.796-801.

The 18-minute body camera video from the April 2020 stop shows Officer Clark interacting with a young Black man, Stephon Johnson, in Martinsville, Virginia, next to a red car. J.A.803. After Clark returns to his patrol car, Johnson approaches him. J.A.188, 803. Clark reaches for Johnson, who steps back. J.A.188, 803. Clark raises a weapon and begins yelling at Johnson to "Go to your knees!" J.A. 188, 803. Johnson does so but nevertheless Clark continues to yell at him and say he was resisting, despite Johnson's obvious efforts to comply. J.A.188, 803. Johnson pleads with Clark to stop and continues to try to comply with his instructions. J.A.188, 803. Clark then points a "drive-stun" device at Johnson, who apparently believes it is a gun, because he pleads

for his life. He also appears to be familiar with Officer Clark, because he uses his name. J.A.189, 803. Although Johnson is not resisting—and indeed has not resisted at any point—Clark shoots him with the "drive-stun" device. J.A.188, 803.

Clark was disciplined by the Martinsville police following the incident. J.A.784-795. He received a written reprimand, three months' probation, and loss of "senior officer" and "field training officer" status during the period of probation. J.A.784. The disciplinary records note that Clark had had other problems with civilians while on his own and recommend that he be more closely supervised as he rarely drew complaints from the public when someone else was with him. J.A.189, 791. Shortly after that, Officer Clark transferred to animal control within the Martinsville Police department. J.A.372.

After the material was disclosed, defense counsel requested additional evidence from the government pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). J.A.088. Specifically, defense counsel requested information related to: action taken in 2019, when the Martinsville Police Department ordered Officer Clark to attend "verbal de-escalation training," Officer Clark's transition to Animal Control Officer following the April 2020 disciplinary action, and based on additional investigation, Officer Clark's exit from the Danville Police Department prior to joining the Martinsville Police Department. J.A.088. The government moved *in limine* to preclude Mr. Belcher from introducing or arguing any evidence to attack Officer Clark, including but not limited to the video or disciplinary

documents disclosed pursuant to the district court's order. J.A.802-811. The government argued that the evidence from the 2020 stop was irrelevant to Mr. Belcher's case, that it would amount to prohibited character evidence under Rule 404, and that it did not qualify for admissibility under Rule 608. J.A.802-811. In response, Mr. Belcher argued that the 2020 incident, video, and disciplinary action were relevant, as they were indicative of Officer Clark's bias, both against young Black men and in favor of the government as a way to rehabilitate his status within the Martinsville Police Department. J.A.092-093. Mr. Belcher also argued that the incident showed Officer Clark's *modus operandi* in interacting with young Black men in the community, a *modus operandi* that both Mr. Belcher and Johnson were apparently familiar with, as they knew Clark. J.A.090-092. Finally, Mr. Belcher argued that the 2020 incident was relevant to Officer Clark's character for untruthfulness. J.A.093. The government filed a reply further opposing the admission of the contested evidence or argument based on it. J.A.100. A hearing was held on the issue, and the district court issued a written order granting the government's motion in limine. J.A.187-198. In particular, the district court held that evidence related to Clark's interaction with Johnson was inadmissible because it was not relevant to any issue in Mr. Belcher's prosecution as it was not similar to Mr. Belcher's traffic stop; it was not probative of any claim in the case, and its introduction was outweighed by the risk of confusion or unfair prejudice. J.A.193. The district court also determined that the video was not evidence of a specific incidence of misconduct

related to Officer Clark's character for truthfulness under Rule 608. J.A.195. The district court therefore granted the government's motion in limine in its entirety. J.A.198.

Shortly before trial, Mr. Belcher requested a clarification of the district court's order with respect to the ability to cross-examine Officer Clark for bias. J.A.229. Over the government's opposition, the district court ruled that it would permit "fulsome and searching cross-examination" for bias of government witnesses. J.A.300. This includes examination for racial bias, bias based on career aspirations, or any other form of bias or prejudice. J.A.301.

## III.    Trial of Joshua Belcher

Mr. Belcher was tried over two days, from July 25 to July 26, 2022. J.A.293, 441. The government's evidence consisted of testimony by Officer Clark, J.A.335-398, accompanied by playing the body camera and dash camera video of Mr. Belcher's arrest, J.A.804-808, as well as photos of the firearm, the marijuana cigarette end, and the truck's registration to Mr. Belcher's father, Roy Hairston, J.A.426-438. The government also offered testimony by Special Agent Keith Teehan of the ATF. J.A.486-517.

Officer Clark testified that he had previously seen the truck Mr. Belcher was driving in front of a local carwash, and that he stopped it the morning of April 20, 2019 for a burned out taillight. J.A.339-340. He testified that Mr. Belcher knew him from previous encounters, J.A.342, and that after telling Mr. Belcher to put his "butt on the bumper" of the patrol car, he took a "quick peek" under the driver's seat with a flashlight and was able to see a firearm. J.A.344. Although the bodycam records Officer

Clark's movements, no firearm is visible at this point on the camera. J.A.804. At that point, Officer Clark detained Mr. Belcher. J.A.344. Officer Clark testified that he did not retrieve the firearm at that point because he did not have gloves on and could contaminate any DNA or fingerprints on the gun. J.A.345-346. Officer Clark testified that Mr. Belcher was "very stressed out" after the discovery of the firearm but was cooperative, J.A.347, and that once backup arrived, Officer Clark took pictures of the truck's interior and the gun. *Id.* Officer Clark also located the truck's registration, showing it was registered to Roy Lynwood Hairston, Jr. J.A.353. Officer Clark waited for Mr. Hairston to arrive to retrieve his truck, and Mr. Belcher asked to be there as well. J.A.356. It was clear to Officer Clark that Mr. Belcher wanted to speak to his father, but Mr. Hairston did not want to speak to Mr. Belcher. J.A.389-390. Officer Clark did not ask Mr. Hairston about the gun, nor did he ascertain if Mr. Hairston had a concealed carry permit. *Id.* J.A.805.

Officer Clark questioned Mr. Belcher "many, many times" about the gun, and Mr. Belcher either failed to respond or said he did not know. J.A386. Clark told him that he could be charged for a separate felony regarding the firearm being stolen if he did not say where he got the gun. *Id.* Mr. Belcher said, "That's the dilemma," then finally responded that he got it from someone whose identity he did not know but he provided no more information than that. J.A.388-389, 806.

Officer Clark testified on cross examination that he had previously been counseled for performance issues by his superiors, J.A.372, and that after the most

9

recent incident, he transferred to animal control. *Id.* He characterized his transfer as a voluntary choice he made to be able to spend more time with his family. J.A.337. However, he testified that that was not a job he wanted to stay in, and he wanted to be promoted to sergeant or investigator. J.A.367.

On the second day of trial, the government offered Special Agent Keith Teehan of the ATF as a witness. Mr. Teehan testified that the firearm had been assembled in Springfield, Massachusetts, J.A.499, and that it was a functioning firearm. J.A.500-501.

As the only evidence in his case, Mr. Belcher sought to introduce a certified copy of Mr. Hairston's prior felony conviction in order to explain both Mr. Hairston's reluctance to talk to Mr. Belcher at the scene of the arrest with police present and Mr. Belcher's ultimate admission that he had bought the gun J.A.526. The government objected based on foundation and relevance, J.A.526-542, and while the district court rejected the government's arguments, J.A.542, it later determined that the certified copy of Mr. Hairston's conviction was nonetheless inadmissible absent evidence that Mr. Belcher knew about Mr. Hairston's prior felony conviction and knew his rights had not been restored. J.A. 546-552, J.A.562-563.

Mr. Belcher offered a jury instruction on "theory of defense," stating, "Mr. Belcher's defense is that he did not 'knowingly' possess any weapon, and that the government has not proven beyond a reasonable doubt that Mr. Belcher knew any weapon was in his father's truck." J.A.439. The district court declined to give this instruction. J.A.559-560.

The jury convicted Mr. Belcher of a violation of 18 U.S.C. § 922(g). J.A.717. Following sentencing and the entry of judgment in this case, J.A.767, Mr. Belcher timely noticed his appeal. J.A.774.

## SUMMARY OF THE ARGUMENT

The district court erred in refusing to admit significant evidence in Mr. Belcher's favor or to give a theory of defense instruction. Mr. Belcher's evidence regarding his father's prior criminal conviction was both relevant and admissible; it was a self-authenticating public record, and it was relevant to explaining the actions of both Mr. Belcher and his father on the day of Mr. Belcher's arrest, given Mr. Belcher's defense that he did not know the firearm was there. In excluding this evidence, the district court applied an improperly stringent test for relevance, and this decision deprived the jury of significant information tending to exculpate Mr. Belcher.

Similarly, the district court erred in excluding evidence regarding Officer Clark's 2020 interaction with another young Black man at a traffic stop and resulting discipline. This episode was admissible under Rule 404(b), as it tended to show Officer Clark's *modus operandi*, intent, and plan in traffic stops with young Black men, namely his tendency to launch unfounded accusations, especially when unsupervised. It was also probative of Officer Clark's character for untruthfulness, given his blatant mischaracterization of the events at the 2020 traffic stop, and thus was a proper subject for cross examination. The failure to admit these two pieces of evidence substantially swayed the jury's verdict, and thus this error requires vacatur and remand for retrial.

11

Finally, the district court erred in failing to give Mr. Belcher's theory of defense instruction. Mr. Belcher's proposed instruction was legally correct, not fairly covered by the other instructions given, and dealt with the heart of Mr. Belcher's defense, such that he was substantially prejudiced by the district court's refusal to give the instruction.

ARGUMENT

## I. The district court erred in denying the admission of Roy Lynwood Hairston, Jr.'s criminal conviction.

### A. *Standard of Review*

Evidentiary rulings are reviewed for abuse of discretion. *United States v. Cole*, 631 F.3d 146, 153 (4th Cir. 2011). A district court abuses its discretion when it "acts arbitrarily, or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007).

### B. *Argument*

Mr. Hairston's conviction was both relevant and admissible, and the district court abused its discretion in refusing to admit it. In order to be relevant and admissible, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" and the fact must be "of consequence in determining the action." Fed. R. Evid. 401. Evidence must also be authentic, a requirement that is

satisfied when there is evidence sufficient to support a finding that the matter in question is what its proponent claims. Fed. R. Evid. 901.

"Relevance typically presents a low barrier to admissibility. Indeed, to be admissible, evidence need only be worth consideration by the jury, or have a plus value." *United States v. Leftenant*, 341 F.3d 338, 346 (4th Cir. 2003); *United States v. Davis*, No. 23-4370, 2024 WL 368329, at *1 (4th Cir. Jan. 31, 2024). Here, Mr. Hairston owned the truck where the gun was found, J.A.353, that truck was associated with his business, J.A.339, and Mr. Belcher was using it for work the day he was arrested. J.A.804. A reasonable juror might wonder why, if Mr. Belcher's defense was that he did not know the gun was there, his father did not come forward to claim it or explain its presence in his own truck. Mr. Hairston's prior conviction answers that question, and thus has a "plus value" for Mr. Belcher's defense.

Evidence that Mr. Hairston had previously been convicted of a felony made it more likely that he would be unwilling to admit that the firearm found in his truck was his and indeed that he would wish to conceal this fact, as it would inculpate him. It explains Mr. Hairston's unwillingness to speak with his son when he came to retrieve the truck, as he would not want to be placed in a position where he would be asked about the firearm. It also explains why Mr. Belcher might ultimately state that the firearm was his, even if it was not. His father is an older man who owns a detail business, J.A.375, and who has avoided trouble for many years; a criminal charge would be detrimental to him—and perhaps to the family—in a way that it would not be for Mr.

Belcher. "That's the dilemma," Mr. Belcher said on the video. J.A.806. Allowing evidence of Mr. Hairston's criminal history—and thus his exposure—would allow the jury to find that Mr. Belcher resolved that dilemma by admitting the gun was his. As such, evidence of Mr. Hairston's criminal conviction was plainly relevant.

Similarly, Mr. Hairston's conviction was a certified public document and was thus sufficiently authenticated under Rule 902. In *United States v. Branch*, 970 F.2d 1368, 1370 (4th Cir. 1992), this Court recognized that the district court must determine whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic. But the "burden to authenticate under Rule 901 is not high—only a *prima facie* showing is required." *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009). The factual determination of whether the evidence actually is that which the proponent claims is reserved for the jury. *Id.* (quoting *Branch*, 970 F.2d at 1370).

In this case, there is no question that the document offered showed a felony conviction for Roy Lynwood Hairston, Jr., of Martinsville, Virginia. Rather, the government argued that it was unclear that that Roy Lynwood Hairston, Jr. of Martinsville, Virginia was the same Roy Lynwood Hairston, Jr. of Martinsville who owned the truck in which Mr. Belcher was stopped. But given that the names were the same (including the "Jr."), the age of the conviction was congruent with Mr. Belcher's father's apparent age, and the location was the same small city in Virginia, Mr. Hairston's conviction easily clears the *prima facie* hurdle. Any question about whether

the two individuals were the same went to the document's weight, not its authenticity. *See Branch*, 970 F.2d at 1370-71 ("Although the district court is charged with making this preliminary determination, because authentication is essentially a question of conditional relevancy, the jury ultimately resolves whether evidence admitted for its consideration is that which the proponent claims.").

Courts have recognized that admission was proper in comparable, or even less well-founded cases. *See, e.g. Vidacak*, 553 F.3d at 349 (admitting foreign military records despite indications that they were not created until three years after the relevant timeframe); *United States v. Cornell,* 780 F.3d 616, 629 (4th Cir. 2015) (admitting a letter purporting to be from another gang member to the defendant, where the author and recipient were identified only by the names "Squrl" and "Jay," reputedly abbreviations of their gang names); *United States v. Teran*, 496 F. App'x 287, 292 (4th Cir. 2012) (admitting threatening text messages against the defendant where the recipient testified that the texts aligned with the defendant's knowledge of his family and the defendant had recently sent another letter stating that he was trying to prevent the recipient from testifying.) In these cases, the district court admitted evidence based on much less robust proofs of identity and authenticity than those available here in admitting the evidence. Mr. Belcher thus made a sufficient showing that his father's conviction was what it purported to be.

The district court ruled that Mr. Hairston's conviction was inadmissible under a different rationale, contending that it was not relevant absent evidence that Mr. Belcher

knew about the conviction and that his father's rights had not been restored. This applied too narrow a test of relevance and discounted the circumstantial evidence that Mr. Belcher did know about his father's conviction.

First, the district court's test of relevancy was too restrictive. Although the district court did not specifically reference Rule 104 of the Federal Rules of Evidence, it appears to have treated proof of Mr. Belcher's knowledge of his father's conviction and lack of restoration of rights as a preliminary question of conditional relevancy under Rule 104(b). But this too presents a very low bar. As the Rules Committee notes:

> If preliminary questions of conditional relevancy were determined solely by the judge, as provided in subdivision (a), the functioning of the jury as a trier of fact would be greatly restricted and in some cases virtually destroyed. These are appropriate questions for juries. . . . The judge makes a preliminary determination whether the foundation evidence is sufficient to support a finding of fulfillment of the condition. If so, the item is admitted. If after all the evidence on the issue is in, pro and con, the jury could reasonably conclude that fulfillment of the condition is not established, *the issue is for them.*

Notes to subdivision (b), Fed. R. Evid. 104 (emphasis added).

In other words, the district court's gatekeeping duties for relevancy are extremely limited. In *Huddleston v. United States*, the Supreme Court recognized that requiring "a preliminary finding by the trial court" that the conditional event occurred "not only superimposes a level of judicial oversight that is nowhere apparent from the language of that provision, but it is simply inconsistent with the legislative history behind Rule 404(b)." 485 U.S. 681, 688 (1988). Thus, when determining whether the evidence is sufficient to meet the requirements of Rule 104(b), "the trial court neither weighs

credibility nor makes a finding" that the conditional fact has been proven by a preponderance of the evidence. Instead, the court "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact by a preponderance of the evidence." *Id.* at 690. *See also United States v. Lopez*, 860 F.3d 201, 217 (4th Cir. 2017) (where the relevance of evidence turns on a conditional fact, "the evidence is admitted and the determination of the conditional fact left to the jury so long as the jury could reasonably find the conditional fact . . . by a preponderance of the evidence.").

The district court's screening for admissibility under Rule 104(b), in other words, is not stringent. In requiring explicit evidence that Mr. Belcher knew of his father's conviction and non-restoration of rights, the district court confused its role and the jury's; the question for the district court was not whether Mr. Belcher had proven he knew this information to the judge, but whether a reasonable jury could find that he did based on the evidence.

Here, a jury could easily find that Mr. Belcher was aware of his father's criminal history. It is reasonable to assume that an adult child who has a criminal conviction of his own would be familiar with his father's criminal history, when the two work together and indeed the son is employed by the father. Further, Mr. Belcher's responses and refusal to answer Clark's questions also suggest that he recognized that his answers might have implications beyond himself. *See, e.g.,* J.A.806 (Clark: "I just need to know

something man. Where'd you get it? How'd you get it?" Belcher: "There's a dilemma with that, though, Clark.")

In addition, the district court made a further error in assuming that evidence of Mr. Hairston's conviction is only relevant if Mr. Belcher knew about it. Even if he did not, it remains relevant to explain the actions of Mr. Hairston given the defense that the gun was actually his. It explains not only why he did not want to talk to his son in the presence of police as well as why he did not need to know about why his son had been arrested (e.g., he already knew, because he put the gun there). Most significantly, it explains to the jury why Mr. Hairston would not have come forward to claim the gun. As such, Mr. Hairston's conviction remains relevant even if Mr. Belcher was not aware of it.

With respect to the other issue raised by the district court—whether Mr. Hairston had had his rights restored—this is more properly an issue that, had the conviction been admitted, the government could have addressed in rebuttal to negate its impact. But Mr. Belcher is not required to prove a negative in order to show that the conviction is relevant.

The government's argument that Mr. Belcher was required to offer Mr. Hairston as a witness is similarly unavailing. Mr. Belcher was not required to call his father, who would potentially incriminate himself. An argument that only Mr. Hairston's testimony will do is akin to an argument that if a murder defendant wishes to show that another person committed the crime based on that other person's motive or some important

circumstantial evidence such as ownership of the instrumentality of the murder, it must bring that other person to court and let him testify himself about having committed it.

Evidence of Mr. Hairston's prior felony conviction was relevant and admissible, and the district court erred in excluding it. It's absence undoubtedly swayed the jury's judgement, for without it the jury had nothing but conjecture to rely on for why both Mr. Belcher and his father behaved the way they did. In contrast, Mr. Hairston's felony conviction provided tangible support for Mr. Belcher's defense that he was unaware the firearm was in the truck, it explained why his father did not claim the firearm himself, and it provided an explanation for why Mr. Belcher would ultimately confess to a crime he did not commit, and thus served as a linchpin of Mr. Belcher's defense.

## II. The district court erred in refusing to allow evidence of Officer Clark's actions during the 2020 traffic stop and resulting discipline.

Rule 404(b) authorizes admission of evidence of a witness's other wrongs, acts, or crimes for defensive purposes "if it tends, along or with other evidence, to negate the defendant's guilt of the crime charged against him." *United States v. Myers*, 589 F.3d 117, 124 (4th Cir. 2009) (citing *United States v. Montelongo*, 420 F.3d 1169, 1174 (10th Cir. 2005)). This "reverse 404(b)" evidence, like ordinary 404(b) evidence, is admissible if its probative value is not substantially outweighed by its prejudicial nature under Rule 403's balancing test. *Id.* The fact that the "other act" at issue here, Officer Clark's 2020 traffic stop and its aftermath, occurred after the events in this case is of no moment to the Rule 404(b) analysis, as (notwithstanding the common shorthand reference to "prior

bad acts") nothing in Rule 404(b) actually requires that the other act have occurred before the instant one. This Court has recognized that subsequent acts are admissible under Rule 404(b). *See, e.g., United States v. Mohr*, 318 F.3d 613, 617 (4th Cir. 2003) ("This rule is understood as a rule of inclusion and covers evidence of both prior and subsequent acts.") (cleaned up). In determining whether to admit "other acts" evidence under Rule 404(b), whether offered by the government or the defense, a court must consider whether the evidence is (1) relevant to an issue other than character—in other words, sufficiently related to the charged offense; (2) necessary; and (3) reliable. *United States v. Rubio*, 87 F.3d 1309, at *4 (4th Cir. June 17, 1996) (unpublished) (citing *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir. 1988)).

The district court abused its discretion in excluding evidence of the 2020 arrest. First, this evidence was relevant to an issue other than Officer Clark's character, namely his motive, intent, and *modus operandi* in dealing with young Black men whom he knew, and who knew him, in unsupervised traffic stops. Correctly or not, in both cases he attacked the subject's authorization to drive, almost in the same words in both cases ("You know you're not supposed to be driving?" J.A.803, 804) and detained them ("Butt on my bumper," J.A.344, 804; "Have a seat in the car," J.A.803). He then used these stops to manufacture more serious offenses. In Johnson's case, Officer Clark accused him of resisting arrest, although, as the district court recognized, he was plainly not resisting. J.A.188. Here, admission of this video would have allowed the defense to argue that Clark had similarly manufactured a basis for arrest by planting the gun in the

truck. This Court's decision is *Mohr* is illustrative: there, evidence of a police officer's subsequent willful release of her police dog on an unresisting teenager was recognized as "certainly relevant" to a prior improper use of a canine, as both incidents involved the officer's "unreasonable release of her police dog," although the factual circumstances surrounding the two releases was different. *Mohr*, 318 F.3d at 618.

Absent the video to show Clark's *modus operandi*, an argument by Mr. Belcher that Clark had planted the gun was far less likely to gain traction, and for that reason Mr. Belcher did not raise it at trial. But a jury could certainly have determined, after seeing Clark's interaction with Johnson, that he had a practice of launching accusations and fabricating offenses in such traffic stops. While the emotional tone of the two stops is certainly different, that does not negate the relevance of Johnson's stop to Mr. Belcher's case because it is the accusation of criminal conduct in both cases that is significant.

The district court applied an improperly narrow view of relevance when it granted the government's motion in limine to exclude this evidence. It focused on how the physical circumstances of Mr. Belcher's stop differed from that of Mr. Johnson's, noting that the former "involved a defective taillight, the odor of marijuana, and the discovery of a stolen handgun." J.A.194. But these are distinctions without a difference; instead, what makes Johnson's stop relevant is the similarity in Clark's approach to both men ("You know you're not supposed to be driving?" J.A.803, 804), their initial detention, and his manufacture of a more serious offense. For this reason, *United States v. Newby*, 403 F. App'x 809 (4th Cir. 2010), relied on by the district court, is inapposite.

In that case, there was no indication that the records of an unrelated internal affairs investigation the defendant sought had any particular similarity to his case. *Id.* at 811.

Second, this evidence was necessary for Mr. Belcher's defense. Without it, the argument that Officer Clark had planted the gun was unlikely to gain traction with the jury, and for that reason, it was ultimately not advanced at trial. Admitting this evidence would have provided a crucial second data point for the jury to use in evaluating Officer Clark's intent and approach to men such as Mr. Belcher. The district court thus erred in finding that it was "not necessary as it is not probative of any claim in this case." J.A.193. It is unquestionably probative of Mr. Belcher's argument that Clark's *modus operandi* in traffic stops of young Black men involves manufacturing offenses when none exist.

Finally, as the district court recognized, this evidence was reliable, as the interaction with Mr. Johnson was recorded on Officer Clark's body camera.

The 2020 traffic stop was also probative of Officer Clark's character for untruthfulness under Rule 608. While the video itself cannot be introduced as extrinsic evidence to attack Officer Clark's character for truthfulness, it was a proper subject for cross-examination. The district court incorrectly focused on Officer Clark's assault on Johnson and his statements to the disciplinary panel afterward, but the more significant feature of the interaction, in terms of Officer Clark's honesty, is his initial statement that Johnson was resisting arrest when he was not. As even the district court recognized, Officer Clark made a patently false statement when he accused Mr. Johnson of resisting.

J.A.188. Whether he made this statement by calculation or because he lost control of the situation, it casts doubt on his credibility, which is the salient factor for Rule 608.

Nor was this evidence more unfairly prejudicial than probative. While this evidence may be prejudicial, it is not unfairly so. *See United States v. Sterling*, 860 F.3d 233, 248 (4th Cir. 2017) ("All probative evidence may be prejudicial . . . in some way, but we have found Rule 404(b) evidence to be unfairly prejudicial when it inflames the jury or encourages them to draw an inference" against the subject based only on a judgment about his "criminal character or wicked disposition."). Here, the evidence at issue weighs in favor of Officer Clark's bias, his unreliability in relating the events that occurred when Mr. Belcher was stopped, and his *modus operandi* in dealing with men such as Mr. Belcher. As such, it has a tendency to negate Mr. Belcher's guilt in this case, and its impact, while no doubt detrimental to the government, is not unfairly so, given its significance and the breadth of Rule 404(b). Further, this Court has long recognized the value of curative jury instructions, and this district court erred in not considering whether a curative instruction could have been given to address any unfair prejudice that might accrue. As this Court has recognized, "[T]he balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996). Thus, "the unfair prejudicial value of evidence 'can be generally obviated by a cautionary or limiting instruction.'" *Id.* (citing *United States v. Masters*, 622 F.2d 83, 87 (4th Cir. 1980)). *See also Sterling*, 860 F.3d at 248. This Court has expressed a preference for admitting evidence under a cautionary

instruction rather than excluding it altogether. *See United States v. Masters*, 622 F.2d 83, 88 n.13 (4th Cir 1980) ("Normally the district court should add a cautionary or limiting instruction if it admits evidence.") The district court abused its discretion in failing to consider whether a cautionary instruction would address the risk of unfair prejudice under Rule 403.

## III. The district court erred in refusing to instruct the jury on Mr. Belcher's theory of defense.

### A. *Standard of review*

This court reviews a district court's decision to give or withhold a particular instruction for abuse of discretion. *United States v. Green*, 599 F.3d 360, 377 (4th Cir. 2010). A district court's refusal to provide a proffered theory of defense instruction is reversible where the instruction is correct, not substantially covered by the court's charge to the jury, and deals with a point of such importance at trial that the failure to give the requested instruction seriously impairs the defendant's ability to conduct his defense. *Id.* at 378.

### B. *Argument*

Mr. Belcher proffered a "theory of defense" instruction advising the jury that his defense was that he did not knowingly possess any weapon and the government had not proven beyond a reasonable doubt that he knowingly possessed the firearm. J.A.439. "As long as the instructions have an evidentiary foundation and are accurate statements of the law, the district court should include instructions to instruct the jury

in the defendant's theory of defense." *United States v. Green*, 599 F.3d 360, 378 (4th Cir. 2010); *United States v. Lewis*, 53 F.3d 29 (4th Cir. 1995). "A theory-of-defense instruction is in order if there is "'sufficient evidence from which a reasonable jury could find'" for the defendant on his theory." *United States v. Hurt*, 527 F.3d 1347 (D.C. Cir. 2008) (quoting *United States v. Glover*, 332 U.S. App. D.C. 74, 153 F.3d 749, 754 (D.C. Cir. 1998) (quoting *Mathews v. United States*, 485 U.S. 58, 63, 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988))). There was evidence supporting Mr. Belcher's instruction in the record, namely Mr. Belcher's repeated denials of knowledge of the firearm. J.A.384-388, 804. Further, Mr. Belcher's instruction was a correct statement of the law: the government must prove, and prove beyond a reasonable doubt, that any possession of the firearm was a knowing one.

The defense instruction was not fairly covered by the instructions actually given, for the crucial reason that the instructions actually given did not place the black-letter law in the context of Mr. Belcher's defense. The district court instructed the jury that the government must prove that Mr. Belcher knowingly possessed a firearm. J.A.705, J.A.708. But that black-letter requirement did not explain to the jury the significance of that requirement for Mr. Belcher's defense. Mr. Belcher's theory of defense instruction, however, advised the jury that Mr. Belcher's lack of knowledge of the firearm was the central issue, and that the entire indictment would fail if the government failed to prove that element beyond a reasonable doubt.

Failing to give this instruction seriously impaired Mr. Belcher's defense. The jury had the benefit of hearing, as part of the jury instructions, precisely what the government accused Mr. Belcher of. *See* J.A.707 (summarizing the indictment). The theory of defense instruction provided a necessary counterweight, placing Mr. Belcher's defense on equal footing with the indictment. While the district court contended that Mr. Belcher could certainly argue this defense—and trial counsel did so—the reality is that a jury is told multiple times throughout the course of the trial that the statements of the attorneys are not evidence and that the judge, not the attorneys, will explain the applicable law to them. *See, e.g.,* J.A.683. As the Supreme Court has recognized, "arguments of counsel cannot substitute for instructions by the court." *Taylor v. Kentucky*, 436 U.S. 478, 488-89 (1978). Failing to explain, as Mr. Belcher requested, that the defense to the charges rested on the government's failure to prove knowing possession thus seriously impaired Mr. Belcher's defense and placed him at a material disadvantage in comparison with the government.

## CONCLUSION

The district court abused its discretion in refusing to admit relevant, material evidence supporting Mr. Belcher's defense as well as in refusing to give Mr. Belcher's theory of defense instruction, thereby seriously impairing his defense. For these reasons, Mr. Belcher's conviction should be vacated and his case remanded for retrial.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

MARY MAGUIRE
Federal Public Defender
for the Western District of Virginia

/s/ Erin Trodden
ERIN TRODDEN
Va. Bar No. 71515
Assistant Federal Public Defender
401 E. Market St., Suite 106
Charlottesville, VA  22902
(434) 220-3380
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.     The brief of the appellant has been prepared using Microsoft Word 2010 software, Garamond font, 14-point proportional type size.

2.     EXCLUSIVE of the table of contents, table of authorities, statement with respect to oral argument, any addendums, and the certificate of service, this brief is 6,809 words in length, and is compliant with Fed. R. App. Pr. 32(a)(7)(B).

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.


02/27/24                                    /s/ Erin Trodden
Date                                          Erin Trodden
                                               Assistant Federal Public Defender

<u>CERTIFICATE OF SERVICE</u>

This is to certify that this Brief of Appellant was electronically filed, and that true and correct copies of the foregoing Brief and of Joint Appendix Volumes I and II were sent by ECF, a copy of Sealed Joint Appendix Volume II was sent by email, and copies of Sealed Joint Appendix Volume IV and Joint Appendix Volume V were sent by U.S. Mail to:

Jonathan Jones
Assistant United States Attorney
jonathan.jones2@usdoj.gov
310 First Street, S.W., Suite 906
Roanoke, VA 24011

on this 27th day of February, 2024.

/s/ Erin Trodden
Erin Trodden
Assistant Federal Public Defender